People v Colon (2020 NY Slip Op 04257)





People v Colon


2020 NY Slip Op 04257


Decided on July 24, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 24, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., NEMOYER, TROUTMAN, WINSLOW, AND BANNISTER, JJ.


429 KA 18-00586

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
PEDRO L. COLON, DEFENDANT-APPELLANT. 






ROBERT A. DINIERI, CLYDE, FOR DEFENDANT-APPELLANT. 
MICHAEL D. CALARCO, DISTRICT ATTORNEY, LYONS (BRUCE A. ROSEKRANS OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Wayne County Court (John B. Nesbitt, J.), rendered November 9, 2017. The judgment convicted defendant upon a jury verdict of criminally negligent homicide and criminal possession of a weapon in the third degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of criminally negligent homicide (Penal Law § 125.10) and criminal possession of a weapon (CPW) in the third degree (§ 265.02 [1]). At trial, the Medical Examiner testified that the victim suffered three stab wounds to the chest, the fatal blow being one that perforated his heart. Defendant took the witness stand, ostensibly to offer testimony favorable to his justification defense. Defendant testified that he stabbed the unarmed victim multiple times with a knife, once in the doorway of defendant's apartment and at least one other time in the common area of the apartment building. Then he pushed the victim, went back into his apartment, and shut the door. A police officer testified that he responded to the scene, found the victim in the street, and followed a trail of blood from the victim's body to the apartment. When the officer arrived at the apartment, defendant had just gotten out of the shower.
We agree with defendant that County Court erred in refusing to suppress his statements to the police. If a person who is subject to police interrogation "indicates in any manner, at any time prior to or during questioning, that he [or she] wishes to remain silent, the interrogation must cease" (Miranda v Arizona, 384 US 436, 473-474 [1966]; see People v Ferro, 63 NY2d 316, 322 [1984], cert denied 472 US 1007 [1985]). The assertion of the right to remain silent " must be unequivocal and unqualified' " (People v Zacher, 97 AD3d 1101, 1101 [4th Dept 2012], lv denied 20 NY3d 1015 [2013]; see People v Morton, 231 AD2d 927, 928 [4th Dept 1996], lv denied 89 NY2d 944 [1997]). Whether a defendant's assertion of that right was "unequivocal is a mixed question of law and fact that must be determined with reference to the circumstances surrounding [that assertion,] including the defendant's demeanor, manner of expression and the particular words found to have been used by the defendant" (People v Glover, 87 NY2d 838, 839 [1995]). Once invoked, the right to remain silent "must be scrupulously honored' " (Ferro, 63 NY2d at 322; see Michigan v Mosley, 423 US 96, 103-104 [1975]).
Here, defendant unequivocally informed the police immediately after being advised of his Miranda rights that "he didn't want to talk." No reasonable police officer could have interpreted that statement as anything other than a desire not to talk to the police (see People v Douglas, 8 AD3d 980, 981 [4th Dept 2004], lv denied 3 NY3d 705 [2004]). Regardless, the police continued the interrogation, thereby failing to " scrupulously honor[ ]' defendant's right to remain silent" (People v Reid, 34 AD3d 1273, 1273 [4th Dept 2006], lv denied 8 NY3d 884 [2007], quoting Miranda, 384 US at 479).
Nevertheless, the error is harmless because the evidence of defendant's guilt is [*2]overwhelming and there is no reasonable possibility that any error in admitting defendant's statements to the police contributed to his conviction (see People v Young, 153 AD3d 1618, 1619 [4th Dept 2017], lv denied 30 NY3d 1065 [2017], reconsideration denied 31 NY3d 1123 [2018]; see generally People v Crimmins, 36 NY2d 230, 237 [1975]).
We reject defendant's further contention that the verdict is repugnant. " [A] verdict is repugnant only if it is legally impossible—under all conceivable circumstances—for the jury to have convicted the defendant on one count but not the other,' and, [i]f there is a possible theory under which a split verdict could be legally permissible, it cannot be repugnant, regardless of whether that theory has evidentiary support in a particular case' " (People v DeLee, 24 NY3d 603, 608 [2014], rearg denied 31 NY3d 1127 [2018]). The verdict here is not repugnant because it is legally possible for a person to possess a knife with the intent to use it unlawfully against another (see Penal Law §§ 265.01 [2]; 265.02 [1]), but for the person to change his or her mind and subsequently engage in negligent behavior resulting in death (see § 125.10).
Defendant failed to preserve for our review his challenge to the legal sufficiency of the evidence because his motion for a trial order of dismissal was not " specifically directed' at the alleged error" asserted on appeal (People v Gray, 86 NY2d 10, 19 [1995]). Nevertheless, " we necessarily review the evidence adduced as to each of the elements of the crimes in the context of our review of defendant's challenge regarding the weight of the evidence' " (People v Stepney, 93 AD3d 1297, 1298 [4th Dept 2012], lv denied 19 NY3d 968 [2012]). Viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
Defendant next contends that the court erred in imposing consecutive sentences because the offenses were "committed through a single act" (Penal Law § 70.25 [2]). We reject that contention. In cases concerning consecutive sentencing in the CPW context, we employ a framework that "appropriately reflects the heightened level of integration between the possession and the ensuing substantive crime for which the weapon was used" (People v Wright, 19 NY3d 359, 365 [2012]). To determine whether a single act constituted both offenses under section 70.25 (2), we look to when the crime of possession was completed, i.e., both the actus reus and mens rea (see Wright, 19 NY3d at 365). "Only where the act of possession is accomplished before the commission of the ensuing crime and with a mental state that both satisfies the statutory mens rea element and is discrete from that of the underlying crime may consecutive sentences be imposed" (id.). Consecutive sentencing is permissible here because defendant's act of possessing the knife was accomplished before he used it to kill the victim and "defendant's possession [thereof] was marked by an unlawful intent separate and distinct from" his intent with respect to the homicide (id. at 367). Indeed, the mental state associated with the CPW count, i.e., intent to use the knife unlawfully, is discrete from the mental state associated with the homicide count, i.e., negligence (cf. id.).
We have considered defendant's remaining contentions and conclude that none warrants reversal or modification of the judgment.
Entered: July 24, 2020
Mark W. Bennett
Clerk of the Court