People v Marrero (2021 NY Slip Op 06510)





People v Marrero


2021 NY Slip Op 06510


Decided on November 19, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 19, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., LINDLEY, CURRAN, TROUTMAN, AND DEJOSEPH, JJ.


937.1 KA 17-00066

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
ADALBERTO MARRERO, DEFENDANT-APPELLANT. 






TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (DREW R. DUBRIN OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LEAH R. MERVINE OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Monroe County Court (Victoria M. Argento, J.), rendered December 1, 2016. The judgment convicted defendant upon a jury verdict of murder in the second degree and criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1]) and criminal possession of a weapon in the second degree (§ 265.03 [3]) in connection with the shooting death of the victim. We affirm.
Defendant contends that County Court erred in refusing to suppress his statements to the police because the police officer who interrogated him effectively neutralized the Miranda warnings by downplaying certain rights embodied in those warnings. We reject that contention. "[I]n determining whether police officers adequately conveyed the [Miranda] warnings, . . . [t]he inquiry is simply whether the warnings reasonably conve[y] to [a suspect] his or [her rights] as required by Miranda" (People v Mateo, 194 AD3d 1342, 1343 [4th Dept 2021], lv denied 37 NY3d 994 [2021] [internal quotation marks omitted]; see Florida v Powell, 559 US 50, 60 [2010]; People v Dunbar, 24 NY3d 304, 315 [2014], cert denied 575 US 1005 [2015]). Although a statement made "by a questioning officer with the intent to undercut the meaning of [the] Miranda warnings . . . is a basis for suppression" where it "deprive[s] [a defendant] of an effective explanation of [his or her] rights" (Mateo, 194 AD3d at 1343 [internal quotation marks omitted]), we conclude that, under the circumstances of this case, the police officer's statement suggesting that one Miranda right was more important than the others did not render the warnings ineffective inasmuch as his reading still reasonably apprised defendant of his rights (see People v Spoor, 148 AD3d 1795, 1797 [4th Dept 2017], lv denied 29 NY3d 1134 [2017]; People v Bakerx, 114 AD3d 1244, 1247 [4th Dept 2014], lv denied 22 NY3d 1196 [2014]).
Defendant also contends that the court should have suppressed his statements because, during the interrogation, a police officer asserted that "now [was] the time" for defendant to provide an explanation for the shooting and that such an explanation would benefit defendant. We agree. "Properly administered Miranda rights can be rendered inadequate and ineffective when they are contradicted by statements suggesting that there is a price for asserting the rights to remain silent or to counsel, such as foregoing 'a valuable opportunity to speak with an assistant district attorney, to have [the] case[ ] investigated or to assert alibi defenses' " (People v Muller, 155 AD3d 1091, 1092 [3d Dept 2017], lv denied 30 NY3d 1118 [2018], quoting Dunbar, 24 NY3d at 316). The police officer's statement here improperly implied to defendant that the interrogation would be his "only opportunity to speak" (Dunbar, 24 NY3d at 316 [internal quotation marks omitted]), and his advice that providing an explanation would benefit defendant effectively "implied that . . . defendant['s] words would be used to help [him], thus undoing the heart of the warning that anything [he] said could and would be used against [him]" (id.; see [*2]People v Alfonso, 142 AD3d 1180, 1181 [2d Dept 2016], lv denied 29 NY3d 946 [2017]).
We also agree with defendant that the court erred in refusing to suppress certain statements because defendant unambiguously invoked his right to remain silent, which the police thereafter failed to scrupulously honor. "If a person who is subject to police interrogation indicates in any manner, at any time prior to or during questioning, that he [or she] wishes to remain silent, the interrogation must cease" (People v Colon, 185 AD3d 1510, 1511 [4th Dept 2020], lv denied 35 NY3d 1093 [2020] [internal quotation marks omitted]). The assertion of the right to remain silent " 'must be unequivocal and unqualified' " (People v Zacher, 97 AD3d 1101, 1101 [4th Dept 2012], lv denied 20 NY3d 1015 [2013]; see People v Morton, 231 AD2d 927, 928 [4th Dept 1996], lv denied 89 NY2d 944 [1997]). "Whether a defendant's assertion of that right was unequivocal is a mixed question of law and fact that must be determined with reference to the circumstances surrounding [that assertion,] including the defendant's demeanor, manner of expression and the particular words found to have been used by the defendant" (Colon, 185 AD3d at 1511-1512 [internal quotation marks omitted]). "Once invoked, the right to remain silent must be scrupulously honored" (id. at 1512 [internal quotation marks omitted]).
Here, about 20 minutes into the interrogation, defendant expressly stated that he did not "want to talk about more of this[, i.e., the shooting]. That's it." We conclude that defendant thereby unequivocally invoked his right to remain silent (see People v Brown, 266 AD2d 838, 838 [4th Dept 1999], lv denied 94 NY2d 860 [1999]) inasmuch as "[n]o reasonable police officer could have interpreted that statement as anything other than a desire not to talk to the police" (Colon, 185 AD3d at 1512). Defendant's responses to the police officers when they resumed the interrogation did not negate his prior unequivocal invocation of his right to remain silent because the police officers failed to reread the Miranda warnings to defendant before resuming the interrogation and therefore failed to scrupulously honor his right to remain silent (see People v Wisdom, 164 AD3d 928, 929 [2d Dept 2018], lv denied 32 NY3d 1211 [2019]; Brown, 266 AD2d at 838; see generally People v Ferro, 63 NY2d 316, 322 [1984], cert denied 472 US 1007 [1985]).
Nevertheless, we conclude that any error in failing to suppress defendant's statements is harmless inasmuch as the evidence of guilt is overwhelming and there is no reasonable possibility that the jury would have acquitted defendant if his statements had been suppressed (see People v Brown, 120 AD3d 954, 955 [4th Dept 2014], lv denied 24 NY3d 1118 [2015]; see generally People v Crimmins, 36 NY2d 230, 237 [1975]). The People provided compellingly consistent eyewitness testimony identifying defendant as the person who shot and killed the victim. Video footage of the shooting, although not of the highest quality, also generally corroborated the eyewitness accounts of what transpired leading up to and including the shooting. Further, defendant's intent to kill the victim was readily inferable from the circumstances established by the eyewitness testimony and the videos—i.e., that defendant shot the fleeing victim several times at close range (see People v Vrooman, 115 AD3d 1189, 1191 [4th Dept 2014], lv denied 23 NY3d 969 [2014]; People v Geddes, 49 AD3d 1255, 1256 [4th Dept 2008], lv denied 10 NY3d 863 [2008]).
We also reject defendant's contention that the court erred in denying his request to instruct the jury on the defense of extreme emotional disturbance (see Penal Law § 125.25 [1] [a]). "The defense of extreme emotional disturbance requires evidence of a subjective element, that defendant acted under an extreme emotional disturbance, and an objective element, that there was a reasonable explanation or excuse for the emotional disturbance" (People v Ashline, 124 AD3d 1258, 1260 [4th Dept 2015], lv denied 27 NY3d 1128 [2016] [internal quotation marks omitted]; see generally People v Roche, 98 NY2d 70, 75-76 [2002]). Here, with respect to the subjective element, the evidence, even viewed in the light most favorable to defendant, establishes only that defendant acted out of anger, which is not tantamount to an extreme emotional disturbance precipitating a true loss of control (see People v Walker, 64 NY2d 741, 743 [1984], rearg dismissed 65 NY2d 924 [1985]; see generally People v White, 79 NY2d 900, 903-904 [1992]). Additionally, although defendant, in support of the assertion that he experienced an extreme emotional disturbance, adduced some evidence establishing that the medications he was taking could result in the impairment of judgment or irrational decision-making, the record is bereft of evidence that those medications actually caused him to experience such symptoms at the time of the shooting (see People v Smith, 1 NY3d 610, 612 [2004]; People v Almeida, 128 AD3d 1451, 1452 [4th Dept 2015], lv denied 26 NY3d 1006 [2015]).
Finally, contrary to defendant's contention, we conclude that the sentence is not unduly harsh or severe.
Entered: November 19, 2021
Ann Dillon Flynn
Clerk of the Court