People v Sullivan (2025 NY Slip Op 03494)

People v Sullivan

2025 NY Slip Op 03494

Decided on June 6, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 6, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., CURRAN, OGDEN, NOWAK, AND KEANE, JJ.

654/24 KA 24-00235

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
WILLIAM SULLIVAN, DEFENDANT-APPELLANT. 

EASTON THOMPSON KASPEREK SHIFFRIN LLP, ROCHESTER (BRIAN SHIFFRIN OF COUNSEL), FOR DEFENDANT-APPELLANT.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (DAVID D. BASSETT OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Onondaga County Court (Matthew J. Doran, J.), rendered August 1, 2019. The judgment convicted defendant, upon his plea of guilty, of unlawful imprisonment in the second degree and criminal possession of a controlled substance in the first degree. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law, the plea is vacated, that part of the omnibus motion seeking to suppress all statements made after defendant invoked his right to remain silent is granted, and the matter is remitted to Onondaga County Court for further proceedings on the indictment.
Memorandum: On appeal from a judgment convicting him, upon a plea of guilty, of unlawful imprisonment in the second degree (Penal Law § 135.05) and criminal possession of a controlled substance in the first degree (§ 220.21 [1]), defendant contends that County Court erred in refusing to suppress statements he made following his arrest. We agree in part.
Defendant's arrest stemmed from an incident in which he allegedly attacked his wife, restrained her with duct tape, and enclosed her in a box. Following his arrest, defendant was placed in an interview room, where he was interviewed by a detective. Defendant and the detective spoke for over two minutes before the detective administered Miranda warnings, and during that time defendant made several incriminating statements (pre-Miranda statements). After administering the Miranda warnings, the detective asked defendant whether he was willing to answer questions; defendant initially responded "No, sir" but then stated that he was "willing to listen to [the detective's] questions." Defendant also signed a constitutional rights waiver form on which he wrote "No Sir" in response to the question on the form asking whether he was willing to answer the detective's questions. The interview proceeded for another 15 minutes, during which time defendant made further statements (post-Miranda statements) regarding the attack on his wife. Defendant thereafter said that he no longer wanted to talk to the detective, and the detective moved defendant to a holding cell. After police officers executed search warrants at defendant's home and at his alleged stash house, resulting in the recovery of drugs, the detective spoke with defendant in the holding cell, allegedly for the purpose of obtaining further "pedigree" information. During that discussion, defendant made additional statements (holding cell statements), including that he had knowledge of an upcoming shipment of drugs.
Defendant's contention that his pre-Miranda statements should have been suppressed is not preserved for our review inasmuch as he did not seek suppression of those statements either in his omnibus motion or at the suppression hearing, both of which focused solely on the validity of defendant's invocation of his right to remain silent and whether the holding cell statements were spontaneous (see People v Brown, 89 AD3d 1473, 1475 [4th Dept 2011], lv denied 18 NY3d 955 [2012]; People v Monroe, 39 AD3d 1276, 1277 [4th Dept 2007], lv denied 9 NY3d 867 [2007]; People v Caballero, 23 AD3d 1031, 1032 [4th Dept 2005], lv denied 6 NY3d 846 [*2][2006]). We decline to exercise our power to review defendant's contention as a matter of discretion in the interest of justice (see CPL 470.15 [3] [c]).
Defendant contends that the court erred in refusing to suppress his post-Miranda statements inasmuch as they were made after he invoked his right to remain silent by answering "No, sir" when asked if he would be willing to answer questions after being advised of his Miranda rights. We agree. " '[I]n order to terminate questioning, the assertion by a defendant of [the] right to remain silent must be unequivocal and unqualified' " (People v Zacher, 97 AD3d 1101, 1101 [4th Dept 2012], lv denied 20 NY3d 1015 [2013]). Whether a defendant's "request was 'unequivocal is a mixed question of law and fact that must be determined with reference to the circumstances surrounding the request[,] including the defendant's demeanor, manner of expression and the particular words found to have been used by the defendant' " (id., quoting People v Glover, 87 NY2d 838, 839 [1995]). Here, we conclude that defendant clearly communicated a desire to cease all questioning indefinitely when he responded "No, sir" to the verbal and written inquiries about whether he was willing to answer questions (see People v Colon, 185 AD3d 1510, 1512 [4th Dept 2020], lv denied 35 NY3d 1093 [2020]).
We further agree with defendant that the court erred in refusing to suppress the holding cell statements, which were also made after defendant unequivocally and unqualifiedly asserted his right to remain silent. Contrary to the People's assertion that the statements were made spontaneously at a time when the detective was seeking "pedigree information," we conclude that the People did not establish that the detective's questions "were reasonably related to the police's administrative concerns" rather than "a disguised attempt at investigatory interrogation" (People v Wortham, 37 NY3d 407, 415 [2021], cert denied — US &mdash, 143 S Ct 122 [2022]).
We therefore reverse the judgment, vacate the plea, and grant that part of the omnibus motion seeking to suppress all statements made after defendant invoked his right to remain silent, and we remit the matter to County Court for further proceedings on the indictment (see People v Corey, 209 AD3d 1306, 1306-1307 [4th Dept 2022]; People v Hughes, 199 AD3d 1332, 1335 [4th Dept 2021]).
All concur except Ogden, J., who dissents in part and votes to reverse in accordance with the following memorandum: I respectfully dissent in part because I believe that, although defendant failed to preserve the issue for our review, the statements defendant made to the detective in the interview room before defendant received Miranda warnings should have been suppressed. Those pre-Miranda questions to defendant constituted interrogation inasmuch as the inquiry was not limited to questions that were "similar to pedigree questions or those necessary for providing for defendant's physical needs" (cf. People v Santiago, 41 AD3d 1172, 1174 [4th Dept 2007], lv denied 9 NY3d 964 [2007] [internal quotation marks omitted]) and the detective asking those questions should have known that his words were reasonably likely to elicit an incriminating response (cf. People v Man Lee Lo, 118 AD2d 225, 230 [4th Dept 1986], lv denied 68 NY2d 814 [1986]). I further conclude that because the "[c]ustodial interrogation of defendant was continuous, punctuated only by [the] administration of the warnings," defendant remained under the influence of improper questioning during his post-Miranda interrogation (People v Morton, 174 AD2d 1019, 1019 [4th Dept 1991], lv denied 78 NY2d 1079 [1991]; see generally People v Bethea, 67 NY2d 364, 367-368 [1986]). As a result, I, unlike the majority, would suppress all statements made by defendant while he was in the interview room.
Entered: June 6, 2025
Ann Dillon Flynn
Clerk of the Court